IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 125-062 |
| | ) | |
| ANTHONY OLOANS | ) | |

**O R D E R**

For the below reasons, the Court **DENIES** Defendant Oloans' Motion for New Detention Hearing and Motion for Secured Communication Line for Privileged Communication. (Doc. nos. 144, 143.)

I.  **MOTION FOR NEW DETENTION HEARING**

Defendant asks the Court for a second detention hearing because the first hearing "was a mere skeleton hearing based largely on proffers by the Government," and he would like an opportunity to present evidence undermining the Court's expressed reasons for detaining him. (Doc. no. 144; see also doc. no. 72.) The government argues Defendant had the opportunity to fully present his case at the first detention hearing, and Defendant has not proffered any new, material evidence that was unavailable or unknown at that time. (See doc. no. 145.)

Following a detention hearing on September 18, 2025, (doc. no. 47), the Court ordered Defendant detained pending trial because he presents a serious risk of obstructing justice and dangerousness to others, (doc. no. 72). Specifically, the Detention Order states:

> Defendant poses a serious risk of obstructing justice, interfering with witnesses, and continuing the alleged scheme. Indeed, the government presented substantial evidence, and a detailed proffer, describing Defendant's actions to

1

>tyrannize church members, coerce many to perform illegal acts against their self-interests, and obstruct members' efforts to assert their property rights and leave the church. Defendant made a mockery of the courts and justice system by (1) making material misrepresentations in real estate and bankruptcy filings, a Fannie Mae investigation, and a deposition; and (2) continuing the scheme after a civil investigation by the U.S. Attorney's Office. While in jail after the indictment issued, Defendant told his wife to hide flash drives and charge burner phones with no explanation and no mention of the intent to preserve these items as evidence.

(Id. at 3.)

Defendant appealed, (doc. no. 112), and United States District Judge J. Randal Hall affirmed after a *de novo* review, (doc. no. 131).

A detention hearing "may be reopened[] . . . at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). "Courts have interpreted this provision strictly, holding that hearings should not be reopened if the evidence was available at the time of the initial hearing or is not material." United States v. Smith, 337 F.R.D. 366, 368 (N.D. Fla. 2020) (internal quotations omitted). Nonetheless, even if a defendant satisfies both elements, "the statute's 'use of the word "may" indicates discretion on the part of the district court. Thus, there is no requirement to reopen a detention hearing.'" Smith, 337 F.R.D. at 368 (quoting United States v. Watson, 475 F. App'x 598, 601 (6th Cir. 2012))

Here, the detention hearing should not be reopened for at least three reasons. First, contrary to Defendant's assertion, he had a full and fair opportunity to present his own witnesses and evidence at the first detention hearing. Indeed, Defendant's former counsel presented a proffer and detailed argument in support of Defendant's release at this hearing.

2

(Court's recording system, *For the Record* ("FTR") 04:14:00-05:03:40 (Sep. 18, 2025).) The Court in no way imposed any limitations on Defendant's presentation of evidence or argument. Defendant never mentioned any difficulties or obstacles to making a full presentation during the first detention hearing and never sought a continuance under 18 U.S.C. § 3142(f)(2).

Second, Defendant fails to establish the evidence he wants to present is material and was unavailable at the time of the initial hearing. He states that he can "provide testimony and evidence to show that he has neither made any material [mis]representations on any court filings, nor has he continued any scheme after a civil investigation." (Doc. no. 144, p. 2.) Defendant offers no further details. Nor does he explain why he could not have presented such evidence at the first hearing. Similarly, he claims a new detention hearing is necessary to explain, through unspecified evidence, what he meant when he directed his wife to hide flash drives and charge burner phones. (Id. at 3.) Defendant offered an explanation during the first hearing. Any additional explanations must have been obviously known at the time of the first hearing, and Defendant does not contend otherwise. Defendant also argues he has recently lost access to all property records, loan records, and all other documents that could be used to further the alleged scheme and manipulate witnesses. (Id. at 2.) They "have recently been stolen from his possession." (Id.) Assuming this information is new and credible, it is not sufficiently material to change the conclusion that Defendant presents a serious risk of obstructing justice and intimidating witnesses.

Third, the Court exercises its discretion to deny the request for a second detention hearing. Section 3142(f)(2) is based on "principles of finality and preservation of judicial resources." United States v. Rodriguez, No. 17-20904-CR, 2025 WL 1019662, at *3 (S.D. Fla. Mar. 5, 2025), *adopted by* 2025 WL 1014779 (S.D. Fla. Apr. 4, 2025), *aff'd by* No. 25-

3

11263, 2025 WL 2901148 (11th Cir. July 7, 2025).  Defendant does not offer sufficiently compelling reasons in favor of reopening his detention hearing to override these important values.  Indeed, it is a waste of resources to reconvene for a defendant who had a full and fair opportunity to present any evidence he deemed relevant at the initial detention hearing, never requested a continuance of the initial hearing or expressed any procedural or substantive concerns at that time, and has no compelling new evidence.  For these reasons, Defendant's motion is **DENIED**.  (Doc. no. 144.)

## II.    MOTION FOR SECURE COMMUNICATION LINE

Defendant asks the Court to order the Jefferson County Jail to provide him with a secure telephone line so that he may speak privately with his wife without monitoring and recording.  (Doc. no. 143.)  He cites the spousal privilege and claims jail monitoring and recording of phone calls with his wife prevent him from preparing his defense.  (See id.)  The government argues that the jail monitors and records calls to further its critical goal of institutional security, and Defendant has no expectation of privacy in calls to his wife using jail phones.  (See doc. no. 146.)

It is undisputed that Defendant has access to telephones at the jail through the facility's HomeWAV system, and calls made on these phones to non-attorneys are subject to recording and monitoring as part of the jail's routine security procedures. (Doc. no. 143, p. 1, 2; doc. no. 146, p. 2.)  Before a telephone call to any non-attorney commences, the system plays a pre-recorded message explaining to the parties that the call is subject to monitoring and recording.  (Doc. no. 143, p. 2; doc. no. 146, p. 2.)  Defendant has access to a private, unmonitored line for conversations with his attorney.  (Doc. no. 143, p. 1; doc. no. 146, p. 2.)

Defendant does not provide any authority to support his unusual request for a court order requiring a private line for him and his wife. As many courts have held, Defendant and his wife do not have a reasonable expectation of privacy, and the marital communications privilege thus does not apply, because they understand their phone calls are being recorded. See, e.g., United States v. Lott, No. 221CR00275, 2021 WL 8443791, at *10 (M.D. Ala. Dec. 8, 2021) ("Given that [defendant] was aware that her phone call was being recorded, the court concludes that she did not have a reasonable expectation of privacy regarding these conversations and that these conversations are not protected by the marital communications privilege."), *adopted by* 2022 WL 1125794 (M.D. Ala. Apr. 15, 2022), *aff'd by* No. 23-12561, 2025 WL 784396 (11th Cir. Mar. 12, 2025); United States v. Madoch, 149 F.3d 596, 602 (7th Cir. 1998) (affirming admission at trial of recorded calls between defendant and spouse because privilege did not apply); United States v. Tartaglione, 228 F. Supp. 3d 402, 407 (E.D. Pa. 2017) ("In this regard, the law is clear that, where one spouse is imprisoned, communications between the married couple on prison telephones are not made in confidence.") (citations omitted). This is true even when jail phones are the primary means of communication. See Watson v. Albin, No. C-06-07767 RMW, 2008 WL 2079967, at *3-4 (N.D. Cal. May 12, 2008) (finding privilege did not apply where inmate "had no means of communicating with [spouse] except on the monitored phone line during his time in prison").

Monitoring and recording phone calls between Defendant and his wife is not a denial of Defendant's "constitutional rights to prepare his case," as he contends, because Defendant has access to a secure, unmonitored line to discuss his case with his attorney. (Doc. no. 143, p. 1.) To the extent Defendant's wife has any information to aid in the defense, she may discuss such matters with Defendant's attorney herself. Ultimately, the crux of Defendant's argument

5

is that he is unable to prepare his case in the way he would prefer, which is not a violation of his rights.

Even if recording and monitoring Defendant's phone calls with his wife infringed on his constitutional rights, which it does not, any such violation is overshadowed by the jail's significant interest in maintaining security and order. After all, "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." Bell v. Wolfish, 441 U.S. 520, 545 (1979). "This principle applies equally to pretrial detainees and convicted prisoners." Id. at 546. Significantly, "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Id.

The Court thus **DENIES** Defendant's motion. (Doc. no. 143.)

SO ORDERED this 4th day of February, 2026, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA