**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **V.** | ) | **Case No. 1:25CR62** |
| | ) | |
| **ANTHONY S. OLOANS** | ) | |
| **Defendant** | ) | |

**DEFENDANT'S MOTION FOR NEW DETENTION HEARING**

COMES NOW ANTHONY S. OLOANS, Defendant in the above-styled matter, and through his attorney of record hereby files this DEFENDANT'S MOTION FOR NEW DETENTION HEARING, showing this Honorable Court as follows:

**BACKGROUND**

On September 10, 2025, Defendant was arrested on the basis of a grand jury arrest warrant issued in connection with the Indictment in this case (Doc. 3). Defendant had his Initial Appearance on September 11, 2025, and he had his Arraignment on September 18, 2025 (Docs. 22 & 47). A Detention Hearing was conducted on September 18, 2025 (Doc. 47) and on September 30, 2025, the Magistrate Judge entered an Order for Detention (Doc. 72). Defendant subsequently appealed the Magistrate's decision, and that decision was upheld by the District Court (Doc. 131). Subsequently, the Defendant filed a Motion for New Detention Hearing, but this request was denied on February 4, 2026 (Doc. 150). Defendant is currently being housed in the Jefferson County Detention Center in Louisville, Georgia.

**ARGUMENT**

Defendant is entitled to a new detention hearing. Although the Defendant has previously had a detention hearing, "the hearing may be reopened…at any time before trial if the judicial

officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). Additionally, "…the person shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise." Id.

In this case, the first detention hearing that Defendant had was a mere skeleton hearing based largely on proffers by the Government. The Defendant did not have the opportunity to present any witnesses or testimony to assert his position that he is not a flight risk and, maybe more importantly, to show that he is not a danger to the community. As to the Government's proffer that Defendant is a risk to interfere with witnesses and continue the "scheme" that is alleged here, the Defendant has several witnesses, including his wife Tamara Oloans, that can provide testimony that Defendant has lost access to any documents or other materials that would be needed to continue to assert any influence over church members because these items have recently been stolen from Defendant's possession. At present, Defendant has no access whatsoever to any property records, loan records, or other documents that would be necessary to exert any influence over anyone. This evidence can be presented at a future detention hearing via live testimony. This information was not known to Defendant at the time of his initial detention hearing, and it weighs overwhelmingly in favor of Defendant not being a risk to obstruct justice, influence witnesses, or continue any scheme. Indeed, the information that the Defendant possessed about any members of the church to conduct any "scheme" is no longer in the Defendant's possession. This evidence was not available at the Defendant's first detention

hearing, but it is available now through live witness testimony. Because of this change, the Defendant is entitled to a new detention hearing.

Additionally, Defendant can provide testimony and evidence to show that he has neither made any material representations on any court filings, nor has he continued any scheme after a civil investigation. Such evidence will be presented via physical exhibits, witness testimony, and brief proffers by Defendant's new counsel that was not present at the initial detention hearing. Defendant can also call witnesses to address what he meant to convey when he directed his wife to preserve burner phones and flash drives for his defense, and indeed the Defendant himself may wish to testify at the hearing to tell the Court his intentions behind those statements. These are all the reasons given by the Magistrate in denying the Defendant's pretrial release at his first detention hearing (Doc. 72-1). Previous counsel did not raise these issues at the initial Detention Hearing because, quite frankly, the Defendant was caught off guard by the Government's allegations. The Defendant did not have sufficient time or knowledge to prepare witnesses or exhibits to counter these baseless assertions.

Additionally, the Defendant has new counsel that was not present at the initial Detention Hearing. The first defense counsel that Defendant had was ineffective in not presenting the Defendant's evidence at the Detention Hearing. Current counsel can easily remedy this ineffective representation at a new Detention Hearing, and therefore the Defendant is entitled to a new hearing in which to do so.

Defendant has no criminal history, and he has resided in the Hinesville, GA area for decades. All of his family is still in that area, and if the Court is concerned about the Defendant fleeing the jurisdiction, then an ankle monitor can be installed on Defendant to track his whereabouts at the Defendant's expense. It is also worth noting that all of the co-defendants in

this case have been released on pretrial bond conditions, except for Defendant "Rony Denis" who has immigration and other concerns that this Defendant does not have.

Both the Bail Reform Act of 1984 and 18 U.S.C. § 3142 contain significant language favoring pretrial release where conditions can be fashioned to ensure the Defendant's presence in court while keeping the community safe. The initial detention hearing was woefully inadequate to address the Defendant's true risk and the facts that support his release. As a result, the Defendant, who is presumed innocent, has suffered great personal loss of liberty and his continued detention is imposing significant hardships on his ability to adequately prepare his defense for trial.

It also must be noted that the Defendant has remained in pre-trial custody continuously since September 10, 2025 (over a calendar year). There is currently no trial date set, nor are there any dates for the Defendant's pre-trial motions to be heard. The Defendant's prolonged pre-trial custody is therefore indefinite, through no fault of his own. The U.S. Supreme Court has noted the possibility that detention could become so long that it would violate the defendant's due process rights. U.S. v. Salerno, 481 U.S. 739 (1987). In Salerno, the Court noted that the Bail Reform Act of 1984's legislative history clearly indicates that Congress formulated the detention provisions "not as punishment for dangerous individuals, but as a potential solution to the pressing societal problem of crimes committed by persons on release." Salerno at 739. In the case at bar, there is absolutely no evidence that the Defendant will commit any crimes if he is released from pre-trial detention. The Defendant has no criminal history. Any information that he could potentially use to cause harm or commit any crimes is no longer in his possession (it has all been stolen). Therefore, the Government can express no legitimate basis for the Defendant potentially committing any new crimes if he is released.

By contrast, the punishment that the Defendant is suffering is real. For over a year, the Defendant, who is presumed innocent, has lost his liberty and has experienced great financial strain because of his continued detention. His ability to prepare his defense has also suffered greatly, as his attorney is located more than two hours from the jail that he is being housed at and attorney communications are limited to fifteen (15) minute sessions over the HomeWav telephone system. This is no way to prepare a defense. There are thousands if not millions of document pages that the Defendant is hindered from reviewing because of his detention. Obviously, this is a severe hindrance to the Defendant's defense. Because there are no hearing or trial dates set, this situation seems to be destined to continue for many months to come.

## CONCLUSION

THEREFORE, Defendant respectfully requests that this Honorable Court enter an Order granting him a new Detention Hearing as soon as possible so that he can present witnesses and physical evidence to support his release. While the Defendant acknowledges that a new hearing will inconvenience the Court and take time to conduct, the importance of pretrial release is so great as to lead the Defendant to respectfully request that he be allowed to present facts to grant him his liberty until he is proven guilty of any criminal wrongdoing. Even if the Court determines that the pre-trial detention is still warranted, fundamental fairness requires that the Court at least take the small step of allowing the Defendant an in-person hearing now over one year later than the last one so that he can at least provide evidence to support his release.

THEREFORE, the Defendant respectfully prays for this Honorable Court to take the small step of allowing him a new Detention Hearing.

Respectfully submitted this 21st day of September, 2026.

/s/ W. Joseph Turner
W. Joseph Turner
Attorney for Defendant
State Bar No.: 513605

The Turner Firm, LLC
Attorneys at Law
104 W. State Street, Suite 230
Post Office Box 8905
Savannah, GA 31412
T: (912) 226-7662
F: (912) 226-7664

**CERTIFICATE OF SERVICE**

I hereby certify that this day I have served counsel for all parties with a copy of the foregoing pleading by filing through the CM/ECF system.

This _21st day of September, 2026.

/s/ W. Joseph Turner
W. Joseph Turner
Attorney for Defendant
State Bar No.: 513605

The Turner Firm, LLC
Attorneys at Law
104 W. State Street, Suite 230
Post Office Box 8905
Savannah, GA 31412
T: (912) 226-7662
F: (912) 226-7664